## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DIENG MAGATTE,

　　　　　Petitioner,

　　v.

CRAIG A. LOWE,[1]

　　　　　Respondent.

No. 4:26-CV-00597

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 22, 2026

Dieng Magatte has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement since August 12, 2025. Earlier this year, Magatte filed a petition for a writ of habeas corpus, asserting that his detention without a bond hearing violated his due process rights. This Court granted that petition and directed the Government to provide Magatte with an individualized bond hearing at which he may present evidence.

On April 6, 2026, an immigration judge ("IJ") held a bond hearing and denied bond for Magatte. Magatte now moves for this Court to enforce its judgment. A review of the available evidence demonstrates to the Court that the bond hearing both failed to comply with its Order, and failed to comply with the requirements of

---

[1]　Craig A. Lowe, as the warden of the Pike County Correctional Facility, is the only proper Respondent, and the remaining named respondents will be dismissed from this action. *See Khalil v. President, United States of America*, 164 F.4th 259, 271 (3d Cir. 2026).

the Due Process Clause of the United States Constitution. Accordingly, the Court will grant the motion and order that Magatte be released from custody.

## I.   BACKGROUND

Magatte, a citizen and native of the Republic of Senegal, entered the United States of America in September 2022 and was later detained by ICE but then released from custody.[2] On August 12, 2025, Magatte was arrested after appearing for a scheduled check-in appointment and ICE initially refused him a bond hearing, asserting that he was subject to mandatory detention.[3]

In March 2026, Magatte filed a 28 U.S.C. § 2241 petition asserting that he was entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).[4] This Court agreed, holding that Magatte was being improperly detained under 8 U.S.C. § 1225(b) and that the denial of a bond hearing violated his due process rights.[5] Consequently, this Court ordered that the Government "provide Magatte with an individualized bond hearing at which he may present evidence."[6]

On April 6, 2026, an IJ held a bond hearing and denied bond for Magatte.[7] The IJ's order denying bond is relatively sparse in reasoning, stating simply "Denied, because . . . [Magatte] failed to meet his burden of proof by a preponderance of the

---

[2]   Doc. 1 at 4; Doc. 4-2 at 2-4.
[3]   Doc. 1 at 3-4; Doc. 4-2 at 3.
[4]   *See* Doc. 1.
[5]   Docs. 7, 8.
[6]   Doc. 8.
[7]   Doc. 9-1.

evidence that he does not pose a danger to the community and that he is not a flight risk."[8]

No transcripts of the underlying hearing have been provided to this Court, but it is apparent that the IJ refused to permit Magatte's wife, Kenya Brown Dieng ("Kenya"), from testifying at the bond hearing.[9] During the hearing, the IJ "fixat[ed]" on previous criminal charges against Magatte—charges that had been withdrawn.[10] These charges were a large part of the IJ's basis for denying bond and ordering that Magatte remain detained.[11]

Although Kenya was not permitted to testify at the bond hearing, Magatte has provided a letter to the Court from Kenya detailing her account of the withdrawn criminal charges against Magatte.[12] That letter asserts that Kenya and Magatte had a disagreement, after which she refused to speak with Magatte, obtained a restraining order, and informed security at her building of that restraining order.[13] One week later, Magatte approached Kenya "peacefully with roses and a gift box;" when security saw this, they notified police, and Magatte eventually voluntarily surrendered himself to the police.[14] Kenya asserts that she felt pressured to pursue charges against Magatte, but later clarified to law enforcement what had occurred

---

[8]    *Id.* at 1.
[9]    Doc. 9 at 2.
[10]   *Id.* at 3; *see* Doc. 9-2 at 3.
[11]   *See* Doc. 9 at 2, 4.
[12]   Doc. 9-3 at 1-2. This letter is not provided in the form of a sworn affidavit.
[13]   *Id.* at 1.
[14]   *Id.*

and withdrew the restraining order against him.[15] Charges against Magatte were thereafter withdrawn.[16]

On April 15, 2026, Magatte filed this motion to enforce the Court's judgement. He asserts that the bond hearing failed to satisfy either this Court's Order or the Due Process Clause for two reasons. First, he argues that the IJ failed to permit critical evidence in the form of testimony from Kenya.[17] Second, he contends that the IJ failed to familiarize herself with the case or have a basic understanding of the facts that supported Magatte's request for bond.[18]

The Government responds that this Court lacks jurisdiction to consider Magatte's motion.[19] First, it argues that 8 U.S.C. § 1226(e) strips this Court of jurisdiction to review the IJ's bond hearing determination.[20] Second, it asserts that Magatte did not exhaust his administrative remedies, which further bars consideration of the motion.[21]

Magatte has filed a reply brief, rendering this matter ripe for disposition.[22] For the reasons discussed below, the motion will be granted.

---

[15]   *Id.* at 1-2.
[16]   *Id.* at 2.
[17]   Doc. 9 at 2-3.
[18]   *Id.* at 3.
[19]   Doc. 10.
[20]   *Id.* at 3-4.
[21]   *Id.* at 4-6.
[22]   Doc. 12.

## II.    DISCUSSION

### A.    Jurisdiction

The Government first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1126(e). That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[23]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[24] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[25]

And beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[26] Courts therefore have "continuing jurisdiction to address alleged

---

[23]    8 U.S.C. § 1126(e).

[24]    *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir.2011)).

[25]    *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

[26]    *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

noncompliance with [a] conditional writ of habeas corpus."[27] Magatte challenges both the constitutional sufficiency of the bond hearing and maintains that the hearing failed to comply with the Court's Order granting his petition for a writ of habeas corpus.[28] Both arguments fall within exceptions to § 1226(e)'s bar on review of a bond determination, and that Section therefore does not divest this Court of jurisdiction to consider Magatte's motion.

The Government next argues that Magatte has failed to exhaust his administrative remedies related to the bond hearing, and therefore this Court should decline to review the motion.[29]

As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[30]

The Court need not determine whether exhaustion of administrative remedies is required because, even when exhaustion is necessary, courts will not enforce that requirements if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative

---

[27] *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir.1995)).

[28] Doc. 9.

[29] Doc. 10 at 4-6.

[30] *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

procedure is clearly shown to be inadequate to prevent irreparable harm."[31] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [the district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[32]

Assuming that Magatte was required to exhaust his administrative remedies, that requirement would be excused here for two reasons. First, as outlined above, exhaustion would be futile since the Board of Immigration Appeals likely would not take up the constitutional question. Second, as discussed below, the IJ's actions unambiguously violated Magatte's due process rights. Accordingly, the Court finds that Magatte was not required to exhaust his administrative remedies, and it has jurisdiction to consider the merits of Magatte's motion.

### B.    Merits

Turning to the merits of Magatte's motion, Magatte asserts that the bond hearing was deficient for two reasons: the IJ did not permit him to call Kenya as a witness, and the IJ was unfamiliar with the facts of Magatte's case.[33] The Government offers no response to the merits of Magatte's argument.[34]

---

[31]   *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

[32]   *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

[33]   Doc. 9.

[34]   *See* Doc. 10.

7

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[35] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[36] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[37] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[38]

Magatte's bond hearing was constitutionally defective because the IJ did not provide Magatte with a reasonable opportunity to present evidence on his own behalf. Specifically, the IJ refused to hear testimony from Kenya, who would have provided context and details surround the criminal charges against Magatte that were withdrawn.[39] The failure to permit this testimony was a substantial blow to Magatte's case for bond, particularly in light of the fact that IJ based the denial of bond in part on those criminal charges.

---

[35]  *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
[36]  *Id.* (internal quotation marks omitted).
[37]  *Id.* (brackets and internal quotation marks omitted).
[38]  *Id.* (internal quotation marks omitted).
[39]  *See* Doc. 9-3 at 1-2.

Nor may it be said that the IJ's actions were harmless, as they had "the *potential* for affecting the outcome of" Magatte's bond hearing.[40] Specifically, the IJ found that Magatte may "pose a danger to the community"[41]—an assessment that was based at least in part on the withdrawn criminal charges. Had the IJ heard testimony from Kenya that those charges were essentially the result of a mistake and misunderstanding,[42] such testimony may well have impacted the determination that Magatte might present a danger to the community.

And even the IJ's assessment that Magatte may pose a flight risk could have been compromised by the absence of testimony from Kenya. Had the IJ heard directly from Kenya that she and Magatte are married and that the restraining order had been lifted, the IJ may have concluded that Magatte had a community and family that he would be unlikely to abandon by fleeing.

In sum, the Court concludes that the IJ failed to provide Magatte with a full and fair bond hearing, and that this action substantially prejudiced Magatte. This in turn means that the IJ both failed to comply with this Court's Order, and failed to comport with the requirements of the Due Process Clause. Consequently, the Court will grant Magatte's motion.

---

[40]  *Serrano-Alberto*, 859 F.3d at 213.
[41]  Doc. 9-1 at 1.
[42]  Doc. 9-3 at 1-2.

9

## C.    Remedy

Having determined that Magatte's bond hearing failed to comply with the Court's Order and was constitutionally deficient, this Court must determine what remedy is appropriate. Respondent has "now violated [Magatte's] due process rights twice: first when [Respondent] initially detained him unlawfully under § 1225(b), and then again when [Respondent] deprived him of a constitutionally adequate bond hearing."[43] Moreover, Magatte has been detained by ICE for more than nine months, all of which indicates that "release is the only just remedy."[44] The Court therefore finds that the appropriate remedy in this matter is to direct that Respondent release Magatte from custody.

## III.    CONCLUSION

For the foregoing reasons, Magatte's motion to enforce the judgement will be granted, and he will be ordered released from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[43]  *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *8 (D.N.J. Mar. 23, 2026).
[44]  *Id.* at *11.

10